1  TODD A. FREALY (SBN 198780)
   JULIET Y. OH (SBN 211414)
2  JEFFREY S. KWONG (SBN 288239)
   LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
4  Los Angeles, California 90034
   Telephone: (310) 229-1234
5  Facsimile:  (310) 229-1244
   Email:  taf@lnbyg.com; jyo@lnbyg.com; jsk@lnbyg.com
6
7  Proposed Attorneys for John Pringle,
   Chapter 7 Trustee
8

9

10              **UNITED STATES BANKRUPTCY COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                  **LOS ANGELES DIVISION**

13

14  In re                                    | Case No. 2:24-bk-20369-NB

15  CINEMA MANAGEMENT GROUP, LLC,            |

16                                            | Chapter 7

17              Debtor.                       | **MOTION TO CONVERT CHAPTER 7
                                               CASE TO ONE UNDER CHAPTER 11
18                                             AND FOR APPOINTMENT OF
                                               CHAPTER 11 TRUSTEE;
19                                             DECLARATIONS OF JOHN PRINGLE,
                                               TODD A. FREALY AND PHILIP FIER
20                                             IN SUPPORT THEREOF**

21                                            | Hearing:
                                               Date:    [To be set]
22                                             Time:    [To be set]
23                                             Place:   255 E. Temple Street
                                                        Courtroom "1545"
24                                                      Los Angeles, California

25                                            | [*EX PARTE* APPLICATION FOR ORDER
                                               SHORTENING TIME FILED
26                                             CONCURRENTLY HEREWITH]

27

28

                          1

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

**PLEASE TAKE NOTICE** that John Pringle, the Chapter 7 trustee ("Trustee") for the bankruptcy estate of Cinema Management Group, LLC, the debtor in the above-captioned Chapter 7 bankruptcy case (the "Debtor"), hereby files this motion (the "Motion") for the entry of an order converting the Debtor's Chapter 7 bankruptcy case to one under Chapter 11 pursuant to 11 U.S.C. § 706(b) and authorizing the appointment of the Trustee as the Chapter 11 trustee pursuant to 11 U.S.C. § 1104.

As described in detail in the Memorandum of Points and Authorities annexed hereto, based upon the Trustee's initial analysis of the Debtor's assets (including the Debtor's distribution rights related to a library of eighty-two (82) feature films), the Debtor's liabilities, and the Debtor's business operations, and discussions with, among others, Philip Fier of Focus Advisory Services (a third party valuation expert within the film and television industry), the Trustee believes that the best way to maximize the value of the Debtor's assets and realize the highest recovery for the Debtor's creditors is to convert the Debtor's case to one under Chapter 11 and maintain the Debtor's business operations in the ordinary course while pursuing an expedited sale process for the Debtor's assets. The Trustee believes that it would be far more effective to undertake the foregoing actions, particularly the continued operation of the Debtor's business, within the context of a Chapter 11 case. In the Trustee's experience, collection of accounts receivable is far more difficult in the context of a Chapter 7 case and counterparties are much less likely to perform or pay. In addition, in the Trustee's experience, a sale in Chapter 7 will attract fewer and less serious buyers than a sale of the same assets in Chapter 11, particularly if the business is continuing to be operated as a going concern.

If the conversion of the Debtor's case is authorized by the Court, it is urgent that the Trustee seek and obtain the use of cash collateral to operate the Debtor's business and retain professionals to conduct a sale process for the Debtor's assets as quickly as possible. While

2

certain of the Debtor's employees and contractors have agreed to provide cooperation with the Trustee's efforts, they cannot be held in limbo for long and require immediate clarification about their roles in the Debtor's case going forward. In addition, if the Debtor's case is not converted to one under Chapter 11, the Trustee will need to determine whether to immediately seek an extension of the February 18, 2025 deadline set forth in 11 U.S.C. § 365(d) to assume or reject all of the Debtor's unexpired contracts (*i.e.*, sales agency agreements and distribution agreements related to the Debtor's library of 82 films) to try to preserve the value of the Debtor's rights under such contracts. Accordingly, the Trustee has filed concurrently herewith an *ex parte* application for an order shortening time on notice for hearing on the Motion, pursuant to which **the Trustee is seeking to have the Motion heard at the earliest date and time that is available to the Court, but no later than February 7, 2025.**

The Motion is based upon this Motion, the Memorandum of Points and Authorities, the Declarations of John Pringle, Todd A. Frealy and Philip Fier annexed hereto, the entire record in the Debtor's bankruptcy case, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order:

1.    granting the Motion in its entirety;

2.    converting the Debtor's Chapter 7 bankruptcy case to one under Chapter 11;

3.    appointing the Trustee as the Chapter 11 trustee of the Debtor's bankruptcy estate; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3

4.    granting such other and further relief as may be necessary or appropriate under the circumstances.

Dated: January 30, 2025

JOHN PRINGLE, CHAPTER 7 TRUSTEE OF CINEMA MANAGEMENT GROUP, LLC

By:_____
      TODD A. FREALY
      JULIET Y. OH
      JEFFREY S. KWONG
      LEVENE, NEALE, BENDER, YOO
        & GOLUBCHIK L.L.P.
      Attorneys for Chapter 7 Trustee

4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

1.    Cinema Management Group, LLC (the "Debtor") commenced its bankruptcy case by filing a voluntary petition under Chapter 7 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code") on December 20, 2024 (the "Petition Date").

2.    On or shortly after the Petition Date, Elissa Miller was appointed as the Chapter 7 trustee of the Debtor's bankruptcy estate. Thereafter, on January 3, 2025, Ms. Miller resigned as the Chapter 7 trustee in the Debtor's case due to a conflict of interest or a situation creating the appearance of a possible conflict [Doc. No. 5].

3.    On or about January 9, 2025, John Pringle was appointed as the Chapter 7 trustee ("Trustee") of the Debtor's bankruptcy estate.

4.    The Debtor is a full service international sales company that was previously headed by veteran sales and distribution executive, Edward Noeltner.  According to the Debtor's company website (https://www.cinemamanagementgroup.com), the Debtor was launched in 2003 with the exclusive international sales on *Hoodwinked – The True Story Of Little Red Riding Hood*, the hit animated feature which went on to gross over $110 million in its worldwide theatrical release and, since 2003, the Debtor has added over 80 titles to its line-up which includes quality feature films of all genres, 3-D animated features and series as well as award-winning feature-length documentaries and series.

5.    As of the Petition Date, the Debtor held distribution rights related to eighty-two (82) feature films. Typically, for each feature film, the Debtor entered into a written sales agency agreement with the production company that owns the rights to such film (each, a "Sales Agency Agreements," and collectively, the "Sales Agency Agreements"), pursuant to which the Debtor was granted the exclusive right to negotiate and enter into agreements (the "Distribution Agreements") with third party distributors, licensees and broadcasters ("Distributors") to distribute the film within specified territories.

6.      The Sales Agency Agreements generally provide for the Debtor to represent the films within the market (including to promote and market the films at film and television festivals/markets), to negotiate and enter into Distribution Agreements to distribute the films, to collect revenues due from Distributors under the Distribution Agreements, to ensure the timely delivery of film materials to Distributors as required under the Distribution Agreements, and to consult with the production company regarding the status of the foregoing sales and distribution activities. In exchange for such services, the Debtor is typically entitled to the payment of a commission based on the gross receipts earned from the distribution of the film rights, plus certain recoupable expenses as specified in the Sales Agency Agreements.

7.      The Debtor's filed bankruptcy schedules [Doc. No. 1] list assets with a total estimated value of approximately $2,432,000 as of the Petition Date, including cash of approximately $1,248,000 and outstanding accounts receivable with a total face value of approximately $240,000. The foregoing figures do not take into account the value of the payments potentially due to the Debtor from Distributors under the terms of the Distribution Agreements (the "Potential Distribution Collections"), which the Debtor's schedules attributes an "Unknown" value to.

8.      The Debtor's filed bankruptcy schedules list two secured debts owed to Banc of California and Bondit LLC totaling approximately $2,918,000 and unsecured debts totaling approximately $7,356,000. All but $150,000 of the total amount of unsecured debt listed by the Debtor relates to obligations purportedly due from the Debtor under the Sales Agency Agreements.

9.      Immediately following his appointment, the Trustee and his proposed counsel began evaluating the Debtor's assets (including the Debtor's rights under the Sales Agency Agreements and Distribution Agreements), the Debtor's liabilities, and the Debtor's business operations to determine the best way to maximize the value of the Debtor's assets and realize the highest recovery for the Debtor's creditors.

10.    Based on the Trustee's investigation to date, the amount of the secured debt owed by the Debtor to Banc of California is substantially overstated by the Debtor and is actually only approximately $1,400,000 (vs. $2,580,000 as listed in the Debtor's bankruptcy schedules). Accordingly, the total amount of the Debtor's secured debt is approximately $1,738,000 (vs. $2,918,000 as listed in the Debtor's bankruptcy schedules).

11.    The Trustee believes, based upon his discussions with the Debtor's principals and employees as well as Philip Fier of Focus Advisory Services, a third-party valuation expert within the film and television industry, that if the Debtor's case is converted to one under Chapter 11, the Debtor's business operations can be maintained in the ordinary course of business (on a streamlined basis), and the value of the Sales Agency Agreements and Distribution Agreements can be preserved and maximized for the benefit of the Debtor's creditors through an expedited sale process.

12.    Based on his preliminary analysis of the Debtor's film library and related rights, Mr. Fier has advised that a Chapter 11 sale process for the Debtor's assets, which maintains the Debtor's business as a going concern, would be the best way to attract serious buyers and maximize the value that can be realized for the Debtor's assets.  Mr. Fier believes that a sale process for the Debtor's assets could be accomplished within approximately sixty (60) days.  If the Court grants this motion and converts the Debtor's case to one under Chapter 11, the Trustee intends to immediately retain Mr. Fier and his firm, Focus Advisory Services, to get a marketing and sale process under way.

13.    The Trustee believes that Tiffany Kilgore, the Marketing and Logistics Director for the Debtor, and Makayla Wilson, the Head of Operations for the Debtor, are both willing to work with the Trustee to maintain the Debtor's business operations and fulfill the Debtor's obligations under the Sales Agency Agreements and Distribution Agreements. Ms. Kilgore, who has worked with the Debtor for over a decade, will be able to provide guidance regarding the terms of the Sales Agency Agreements and Distribution Agreements, ensure compliance with marketing and advertising commitments related to the films in the Debtor's library, collect

7

1  amounts owed from Distributors, and perform other related services. Ms. Wilson will be able to

2  invoice Distributors to ensure timely collections under the Distribution Agreements, perform

3  general bookkeeping services, and manage and update the list of the Debtor's library of film

4  rights. Due to personal issues, Edward Noeltner (the Debtor's President) will not be involved

5  with "day to day" operations, but has informed the Trustee that he will be available for any

6  questions.

7  ## II.    DISCUSSION

8      11 U.S.C. § 706(b) gives an interested party in a Chapter 7 bankruptcy case the right to

9  seek the entry of a Court order converting the case to one under Chapter 11 of the Bankruptcy

10  Code. Section 706(b) specifically states that "[o]n request of a party in interest and after notice

11  and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this

12  title at any time." 11 U.S.C. § 706(b).

13      Although the term "party in interest" is not specifically defined in the Bankruptcy Code,

14  11 U.S.C. § 1109(b) refers to the term and presumes to include a trustee. Specifically, Section

15  1109(b) states that "[a] party in interest, including the debtor, the *trustee*, a creditors'

16  committee, an equity security holders' committee, a creditor, an equity security holder, or any

17  indenture trustee, may raise and may appear and be heard on any issue in a case under this

18  chapter." 11 U.S.C. § 1109(b) (emphasis added). Since a Chapter 7 trustee is required under the

19  Bankruptcy Code to act as the representative of a debtor's estate and holds a statutory duty to,

20  among other things, ensure that the estate is properly liquidated, a Chapter 7 trustee is

21  indisputably a "party in interest" for purposes of seeking the conversion of a case to maximize

22  the value of estate assets for the benefit of creditors. *See* 11 U.S.C. §§ 323 and 704. Based on

23  the foregoing, the Trustee submits that he is a party in interest entitled to seek the conversion of

24  the Debtor's Chapter 7 bankruptcy case to one under Chapter 11 pursuant to 11 U.S.C. § 706.

25      Whether to convert a Chapter 7 case to one under Chapter 11 is within the sound

26  discretion of the court and depends upon whether conversion would "inure to the benefit of all

27  parties in interest." *In re LaFountaine*, 2016 WL 3344003 *2 (B.A.P. 9th Cir. 2016). Courts

28

have considered a variety of factors in deciding whether to convert a case from chapter 7 to chapter 11 under § 706(b), including whether conversion benefits all parties in the case and whether creditors would receive more in a chapter 11 than a chapter 7. *In re Parvin*, 538 B.R. 96, 102 (Bankr. W.D. Wash. 2015) (citations omitted).

As noted above, the Trustee believes, based upon his discussions with the Debtor's principals and employees as well as Mr. Fier of Focus Advisory Services, that if the Debtor's case is converted to one under Chapter 11, the Debtor's business operations can be maintained in the ordinary course of business (on a streamlined basis), and the value of the Sales Agency Agreements and Distribution Agreements can be preserved and maximized for the benefit of the Debtor's creditors through an expedited sale process.

As reflected in the Declaration of Philip Fier annexed hereto, conducting a sale process in the context of a Chapter 11 case, while maintaining the Debtor's business as a going concern, is the best way to attract serious buyers and maximize the value that can be realized for the Debtor's assets.

With the assistance of Ms. Kilgore and Ms. Wilson, the Trustee believes that the Debtor will be able to sustain its business operations at a level sufficient to (a) comply with the Debtor's obligations under the Sales Agency Agreements and Distribution Agreements, (b) collect the Potential Distribution Collections in the ordinary course of its business, and (c) pursue a marketing and sale process for the Debtor's assets, which together could result in a potentially significant recovery for the Debtor's unsecured creditors. The Trustee believes that it would be far more effective to undertake the foregoing actions, particularly the continued operation of the Debtor's business, within the context of a Chapter 11 case. In the Trustee's experience, collection of accounts receivable is far more difficult in the context of a Chapter 7 case and counterparties are much less likely to perform or pay. In addition, in the Trustee's experience, a sale in Chapter 7 will attract fewer and less serious buyers than a sale of the same assets in Chapter 11, particularly if the business is continuing to be operated as a going concern.

Based on the foregoing, the Trustee strongly believes that the conversion of the Debtor's case to one under Chapter 11 will maximize the value of the Debtor's assets and result in the best and highest recovery for the Debtor's creditors.

In addition to an order converting the Debtor's bankruptcy case to one under Chapter 11, the Trustee requests that the Court enter an order appointing him as the Chapter 11 trustee of the Debtor's bankruptcy case.

11 U.S.C. § 1104 gives the Court the power to appoint a trustee. Specifically, section 1104(a) states as follows:

(a)    At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
    (1)    for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
    (2)    if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

The Debtor's President, Edward Noeltner, has advised that, due to personal reasons, he will not be available to run (or even be involved with) the Debtor's "day to day" operations. As a result, the Debtor is currently left without any management, which the Trustee submits constitutes cause under Section 1104(a)(1) to appoint a Chapter 11 trustee in the Debtor's case. Given the current void in management, the Trustee submits that the appointment of a qualified Chapter 11 trustee, who can manage the operation of the Debtor's business, oversee a sale process for the Debtor's assets, and ensure the orderly liquidation and administration of the Debtor's estate, is necessary and in the overwhelming best interests of the Debtor's creditors. Accordingly, cause also exists under Section 1104(a)(2) to appoint a Chapter 11 trustee in the Debtor's case.

The Trustee submits that he is well qualified to act as the Chapter 11 trustee of the Debtor's bankruptcy estate, particularly since he and his proposed counsel have already spent a considerable amount of time and resources investigating the Debtor's assets, liabilities and business operations and are therefore best positioned to proceed with the administration of the Debtor's estate without undue delay.

Based on the foregoing, the Trustee requests that, concurrently with the conversion of the Debtor's bankruptcy case to one under Chapter 11, the Court appoint him as Chapter 11 trustee of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 1104(a).

## III.    **CONCLUSION**

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order:

1.    granting the Motion in its entirety;

2.    converting the Debtor's Chapter 7 bankruptcy case to one under Chapter 11;

3.    appointing the Trustee as the Chapter 11 trustee of the Debtor's bankruptcy estate; and

4.    granting such other and further relief as may be necessary or appropriate under the circumstances.

Dated: January 30, 2025

JOHN PRINGLE, CHAPTER 7 TRUSTEE OF
CINEMA MANAGEMENT GROUP, LLC

By:_____
    TODD A. FREALY
    JULIET Y. OH
    JEFFREY S. KWONG
    LEVENE, NEALE, BENDER, YOO
       & GOLUBCHIK L.L.P.
    Attorneys for Chapter 7 Trustee

11

## <u>DECLARATION OF JOHN PRINGLE</u>

I, John Pringle, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto. I am the duly appointed Chapter 7 Trustee of the bankruptcy estate of Cinema Management Group, LLC (the "<u>Debtor</u>").

2.      I submit this declaration in support of my motion for the entry of an order converting the Debtor's Chapter 7 bankruptcy case to one under Chapter 11 pursuant to 11 U.S.C. § 706(b) and authorizing my appointment as the Chapter 11 trustee pursuant to 11 U.S.C. § 1104 (the "<u>Motion</u>"). All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

3.      The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code *on* December 20, 2024 (the "<u>Petition Date</u>").

4.      I am advised and believe that, on or shortly after the Petition Date, Elissa Miller was appointed as the Chapter 7 trustee of the Debtor's bankruptcy estate. I am further advised and believe that, on January 3, 2025, Ms. Miller resigned as the Chapter 7 trustee in the Debtor's case due to a conflict of interest or a situation creating the appearance of a possible conflict [Doc. No. 5].

5.      On or about January 9, 2025, I was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

6.      I am advised and believe that the Debtor is a full service international sales company that was previously headed by veteran sales and distribution executive, Edward Noeltner.      According      to      the      Debtor's      company      website (https://www.cinemamanagementgroup.com), the Debtor was launched in 2003 with the exclusive international sales on *Hoodwinked – The True Story Of Little Red Riding Hood*, the hit animated feature which went on to gross over $110 million in its worldwide theatrical release and, since 2003, the Debtor has added over 80 titles to its line-up which includes quality feature films of all genres, 3-D animated features and series as well as award-winning feature-length documentaries and series.

7.    Based on my investigation to date, as of the Petition Date, the Debtor held distribution rights related to eighty-two (82) feature films. Typically, for each feature film, the Debtor entered into a written sales agency agreement with the production company that owns the rights to such film (each, a "Sales Agency Agreements," and collectively, the "Sales Agency Agreements"), pursuant to which the Debtor was granted the exclusive right to negotiate and enter into agreements (the "Distribution Agreements") with third party distributors, licensees and broadcasters ("Distributors") to distribute the film within specified territories.

8.    I am advised and believe that the Sales Agency Agreements generally provide for the Debtor to represent the films within the market (including to promote and market the films at film and television festivals/markets), to negotiate and enter into Distribution Agreements to distribute the films, to collect revenues due from Distributors under the Distribution Agreements, to ensure the timely delivery of film materials to Distributors as required under the Distribution Agreements, and to consult with the production company regarding the status of the foregoing sales and distribution activities. In exchange for such services, the Debtor is typically entitled to the payment of a commission based on the gross receipts earned from the distribution of the film rights, plus certain recoupable expenses as specified in the Sales Agency Agreements.

9.    The Debtor's filed bankruptcy schedules [Doc. No. 1] list assets with a total estimated value of approximately $2,432,000 as of the Petition Date, including cash of approximately $1,248,000 and outstanding accounts receivable with a total face value of approximately $240,000. The foregoing figures do not take into account the value of the payments potentially due to the Debtor from Distributors under the terms of the Distribution Agreements (the "Potential Distribution Collections"), which the Debtor's schedules attributes an "Unknown" value to.

10.    The Debtor's filed bankruptcy schedules list two secured debts owed to Banc of California and Bondit LLC totaling approximately $2,918,000 and unsecured debts totaling approximately $7,356,000. All but $150,000 of the total amount of unsecured debt listed by the

Debtor relates to obligations purportedly due from the Debtor under the Sales Agency Agreements.

11.    Immediately following his appointment, my proposed counsel and I began evaluating the Debtor's assets (including the Debtor's rights under the Sales Agency Agreements and Distribution Agreements), the Debtor's liabilities, and the Debtor's business operations to determine the best way to maximize the value of the Debtor's assets and realize the highest recovery for the Debtor's creditors.

14.    Based on my investigation to date, which includes a discussion my proposed counsel had with counsel for secured creditor Banc of California, the amount of the secured debt owed by the Debtor to Banc of California is substantially overstated by the Debtor and is actually only approximately $1,400,000 (vs. $2,580,000 as listed in the Debtor's bankruptcy schedules). Accordingly, the total amount of the Debtor's secured debt is approximately $1,738,000 (vs. $2,918,000 as listed in the Debtor's bankruptcy schedules).

15.    I believe, based upon my discussions with the Debtor's principals and employees as well as Philip Fier of Focus Advisory Services, a third-party valuation expert within the film and television industry, that if the Debtor's case is converted to one under Chapter 11, the Debtor's business operations can be maintained in the ordinary course of business (on a streamlined basis), and the value of the Sales Agency Agreements and Distribution Agreements can be preserved and maximized for the benefit of the Debtor's creditors through an expedited sale process.

16.    Based on Mr. Fier's preliminary analysis of the Debtor's film library and related rights, Mr. Fier has advised that a Chapter 11 sale process for the Debtor's assets, which maintains the Debtor's business as a going concern, would be the best way to attract serious buyers and maximize the value that can be realized for the Debtor's assets. Mr. Fier has advised that he believes that a sale process for the Debtor's assets could be accomplished within approximately sixty (60) days. If the Court grants the Motion and converts the Debtor's case to one under Chapter 11, I intend to immediately retain Mr. Fier and his firm, Focus Advisory Services, to get a marketing and sale process under way.

17.     I am advised and believe that Tiffany Kilgore, the Marketing and Logistics Director for the Debtor, and Makayla Wilson, the Head of Operations for the Debtor, are both willing to work with me to maintain the Debtor's business operations and fulfill the Debtor's obligations under the Sales Agency Agreements and Distribution Agreements. Ms. Kilgore, who has worked with the Debtor for over a decade, will be able to provide guidance regarding the terms of the Sales Agency Agreements and Distribution Agreements, ensure compliance with marketing and advertising commitments related to the films in the Debtor's library, collect amounts owed from Distributors, and perform other related services. Ms. Wilson will be able to invoice Distributors to ensure timely collections under the Distribution Agreements, perform general bookkeeping services, and manage and update the list of the Debtor's library of film rights. Due to personal issues, Edward Noeltner (the Debtor's President) as advised that he will not be involved with "day to day" operations, but has informed me that he will be available for any questions.

18.     With the assistance of Ms. Kilgore and Ms. Wilson, I believe that the Debtor will be able to sustain its business operations at a level sufficient to (a) comply with the Debtor's obligations under the Sales Agency Agreements and Distribution Agreements, (b) collect the Potential Distribution Collections in the ordinary course of its business, and (c) pursue a marketing and sale process for the Debtor's assets, which together could result in a potentially significant recovery for the Debtor's unsecured creditors. I believe that it would be far more effective to undertake the foregoing actions, particularly the continued operation of the Debtor's business, within the context of a Chapter 11 case. In my experience, collection of accounts receivable is far more difficult in the context of a Chapter 7 case and counterparties are much less likely to perform or pay. In addition, in my experience, a sale in Chapter 7 will attract fewer and less serious buyers than a sale of the same assets in Chapter 11, particularly if the business is continuing to be operated as a going concern.

/ / /

/ / /

19.    I believe that I am well qualified to act as the Chapter 11 trustee of the Debtor's bankruptcy estate, particularly since my proposed counsel and I have already spent a considerable amount of time and resources investigating the Debtor's assets, liabilities and business operations and are therefore best positioned to proceed with the administration of the Debtor's estate without undue delay.

20.    If the conversion of the Debtor's case is authorized by the Court, it is urgent that I seek and obtain the use of cash collateral to operate the Debtor's business and retain professionals to conduct a sale process for the Debtor's assets as quickly as possible. While Ms. Kilgore and Ms. Wilson have agreed to provide cooperation with my efforts, they cannot be held in limbo for long and require immediate clarification about their roles in the Debtor's case going forward. In addition, if the Debtor's case is not converted to one under Chapter 11, I will need to determine whether to immediately seek an extension of the February 18, 2025 deadline set forth in 11 U.S.C. § 365(d) to assume or reject all of the Debtor's unexpired Sales Agency Agreements and Distribution Agreements to try to preserve the value of the Debtor's rights under such contracts. Accordingly, I am seeking to have the Motion heard at the earliest date and time that is available to the Court, but no later than February 7, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 30th day of January, 2025, at _Industry_, California.


_JOHN PRINGLE_

## <u>DECLARATION OF TODD A. FREALY</u>

I, Todd A. Frealy, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am a partner of Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("<u>LNBYG</u>"), proposed bankruptcy counsel to John Pringle (the "<u>Trustee</u>"), the Chapter 7 trustee of the bankruptcy estate of Cinema Management Group, LLC (the "<u>Debtor</u>"). I am licensed to practice law in the State of California and before this Court.

3.      I submit this declaration in support of the Trustee's motion for the entry of an order converting the Debtor's Chapter 7 bankruptcy case to one under Chapter 11 pursuant to 11 U.S.C. § 706(b) and authorizing my appointment as the Chapter 11 trustee pursuant to 11 U.S.C. § 1104 (the "<u>Motion</u>"). All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

4.      Immediately following his appointment as Trustee on January 9, 2025, the Trustee and LNBYG began evaluating the Debtor's assets (including the Debtor's rights under the Sales Agency Agreements and Distribution Agreements), the Debtor's liabilities, and the Debtor's business operations to determine the best way to maximize the value of the Debtor's assets and realize the highest recovery for the Debtor's creditors.

5.      I was advised by Jennifer Hardy of Wilkie Farr & Gallagher LLP, who is counsel for the Debtor's secured creditor Banc of California, that the amount of the secured debt owed by the Debtor to Banc of California is approximately $1,400,000.

6.      I have had numerous discussions and exchanged correspondence with both Tiffany Kilgore, the Marketing and Logistics Director for the Debtor, and Makayla Wilson, the Head of Operations for the Debtor. Both Ms. Kilgore and Ms. Wilson have confirmed that they are willing to work with the Trustee to maintain the Debtor's business operations and fulfill the Debtor's obligations under the Sales Agency Agreements and Distribution Agreements. Ms. Kilgore, who has worked with the Debtor for over a decade, will be able to provide guidance regarding the terms of the Sales Agency Agreements and Distribution Agreements, ensure

1 | compliance with marketing and advertising commitments related to the films in the Debtor's

2 | library, collect amounts owed from Distributors, and perform other related services. Ms. Wilson

3 | will be able to invoice Distributors to ensure timely collections under the Distribution

4 | Agreements, perform general bookkeeping services, and manage and update the list of the

5 | Debtor's library of film rights. Due to personal issues, Edward Noeltner (the Debtor's President)

6 | will not be involved with "day to day" operations, but has informed the Trustee and me that he

7 | will be available for any questions.

8 | I declare under penalty of perjury under the laws of the United States of America that the

9 | foregoing is true and correct.

10 | Executed on this 30th day of January, 2025, at _Los Angeles_, California.

13 | _Todd a. Frealy_

TODD A. FREALY

## DECLARATION OF PHILIP FIER

I, Philip Fier, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the principal of Focus Advisory Services ("Focus Advisory"), a firm which provides financial and strategic consulting services to some of the largest independent film and television companies in Hollywood, multinational media and entertainment companies, international tax and equity funds, national law firms and independent producers. Prior to Focus Advisory, I was Senior Vice President of Business Development at Sony Pictures Entertainment where my groups were responsible for all strategic planning and financial analysis. Prior to Sony, I was Vice President and Chief Financial Officer of 20th Century Fox International working on marketing and distribution strategy, acquisitions and co-financing arrangements. At both Sony and Fox, I worked on structuring and implementing deals with some of the world's top producers including Revolution Studios, Lucasfilm, MGM and New Regency.

3.      Focus Advisory and I have been involved in dozens of bankruptcy cases, and I have conducted valuations and/or sale processes in both Chapter 7 and Chapter 11 contexts.

4.      I was approached by John Pringle, who I am advised and believe is the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Cinema Management Group, LLC (the "Debtor"), and the Trustee's counsel regarding a possible role for Focus in the Debtor's bankruptcy case. I was asked to conduct a very preliminary analysis of the Debtor's film library and related rights so that the Trustee can determine the best way to maximize the value of the Debtor's assets.

5.      To conduct my preliminary analysis, I was provided with the Debtor's film "hit list" report, which includes details regarding the terms of the Distribution Agreements entered into by the Debtor (as sales agent) and various distributors for the Debtor's library of 82 films.

/ / /

/ / /

/ / /

6.      Based on my preliminary analysis of the Debtor's "hit list" report, I believe that a Chapter 11 sale process for the Debtor's assets, which maintains the Debtor's business as a going concern, would be the best way to attract serious buyers and maximize the value that can be realized for the Debtor's assets.  I believe that a sale process for the Debtor's assets could be accomplished within approximately sixty (60) days.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 30th day of January, 2025, at Los Angeles, California.

_____

PHILIP FIER

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Los Angeles, California 90034.

A true and correct copy of the foregoing document entitled **Motion To Convert Chapter 7 Case To One Under Chapter 11 And For Appointment Of Chapter 11 Trustee; Declarations Of John Pringle, Todd A. Frealy, And Philip Fier In Support Thereof** be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 31, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jerome S Cohen    jsc@jscbklaw.com**
- **Jeffrey S Kwong    jsk@lnbyg.com, jsk@ecf.inforuptcy.com**
- **Paul J Laurin    plaurin@btlaw.com,
  slmoore@btlaw.com;jboustani@btlaw.com;jose.barajas@btlaw.com**
- **John D Monte    johnmontelaw@gmail.com, monte.johnb117807@notify.bestcase.com**
- **John P Pringle (TR)    brenfro@rpmlaw.com,
  jpp@trustesolutions.net;jpringle@rpmlaw.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On **January 31, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 31, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| **January 31, 2025** | Rebecka Merritt | */s/ Rebecka Merritt* |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-2
Case 2:24-bk-20369-NB
Central District of California
Los Angeles
Fri Jan 31 09:29:36 PST 2025

Cinema Management Group, LLC
8501 Wilshire Boulevard - Suite 320
Beverly Hills, CA 90211-3134

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

7137443 Canada, Inc.
420 Beaubien Ouest - Suite  204
Montreal, Quebec Canada H2V 4$6

9129-4181 Quebec, Inc
209 Place Jean Juneau
St Augustin de Desmaures, Quebec Canada

A Stranger in Paradise, LLC
c/o Jay Boccia and Daemon Hillin
1112 Montana Avenue
Santa Monica, CA 90403-1652

Aliwood Mediterraneo Producciones
Paseo de la Explanada de Espana - #
Alicante, Spain

American Inquisition, LLC
c/o Uncommon Productions, LLC
760 Main Street - 3rd Floor
Waltham, MA 02451-0625

Andes Distribution LLC
3737 Howard Hughes Parkway -  Suite 500S
Las Vegas, NV 89169

Argentum Ent/Nouvelle Vie, LLC
21201 Kittridge Street - #4412
Canoga Park, CA 91303-5020

Banc of California
10100 Santa Monica Boulevard - Suite 500
Los Angeles, CA 90067-4121

Blood Out Productions, LLC
10000 Celtic Drive
Baton Rouge, LA 70809-2501

Bondit LLC
1639 11th Street - Suite 160
Santa Monica, CA 90404-3727

Bubble Distribution, LLC
8840 Wilshire Boulevard
Beverly Hills, CA 90211-2606

C-Films Deutschland GmbH
Neuer Pferdemarkt 23
Hamburg 20359 Germany

Carpe Diem Film TV, Inc.
5337 Boul St Laurent - Suite 210
Montreal, Quebec Canada H2T 1 S5

Cleveland Family Trust
Attn: Russell Cleveland
5307 Bent Tree Drive
Dallas, TX 75248-2005

Comet Film GmbH
Wilhelminenstr. 6 01099 Dresden
Germany

Cool Beans BV
Donkercurtiusstraaat 7/500 A
1051 JL Amsterdam, The Netherlands

Cool Beans BV
Joop Geesinkweg 501
11114 AM Amsterdam, The Netherlands

Distribution 10e Ave Inc.
209 Jean-Juneau St-Augustin de Desmaures
Quebec Canada G3A 2W1

Dream Well Studio
Olu Iela 9 Riga, LV 1024
Latvia

ENT One Studios, LTD
Pory 65/48 02-757 Warsaw
Poland

Edward Noeltner
112 rue Caulaincourt
Paris, France 75018
CA

Franchise Tax Board
ATTN:  Bankruptcy
POB 2952
Sacramento, CA 95812-2952

Frobro Films, LLC
124 West Garfield Avenue - Apt A
Glendale, CA 91204-2102

Gasland, LLC
37 Grand Avenue - 3rd Floor
Brooklyn, NY 11205-1309

Gullane Entretenimento SA
Rue Baralha, 137
Alto da Lapa 05083-020 S?o Paulo Brazil

Gunned Down Productions, Limited
20 Bunhill Row
London EC1Y 8UE Great Britain

Internal Revenue Service
POB 7346
Philadelphia, PA 19101-7346

Jim Taylor
6481 Weeping Willow Way
Tallahassee, FL 32311-0309

Karen Frederiksen
1417 Glenbrook Drive
Oklahoma City, OK 73118-1025

Khumba Film Pty Ltd
The Long House Dreyersdal Farm
Bergvliet, Caps Town South Africa


Liddell Entertainment, LLC
606 North Larchmont Boulevard - Suite 20
Los Angeles, CA 90004-1309

Lipper/Daly Productions, LLC
13838 Albers Street
Van Nuys, CA 91401-5811

Little Big Boy, AIE
Calle de la Lleialtat 16, 4th Floor
Barcelona 08001, Spain


Loosies LLC
255 Main Street
East Greenwich, RI 02818

Loving Vincent Distribution Limited
14a Goodwin's Court
London WC2N 4LL United Kingdom

Loving Vincent Limited
14a Goodwin's Court
London WC2N 4LL United Kingdom


MPI, Ltd
11300 West Olympic Boulevard - Suite 770
Los Angeles, CA 90064-1644

Marie-Claude Beauchamp
420 Beaubien Wes - Suite 204
Montreal, Canada H2V 4S

Melmoth Productions Limited
9-11 Broadwick Street
London W1F 0DB, United Kingdom


Mission Katmandou Inc.
209 Jean-Juneau St- Augustin de Desmaure
Quebec, Canada G3A 2W1

Mondex & Cie Sarl
10 Rue Mesnil Paris 75116
France

Mulmur's Still, Inc.
528100 5th Sideroad
Mansfield, Ontario Canada L0N 1MO


No Man's Land LLC
423 North Fairview Strret
Burbank, CA 91505-3528

Numb Production Ltd
6508 Denbigh Avenue - $416
Burnaby, BC Canada V5H W6

Odd Box, LLC
14301 Caliber Drive - Suite 300
Oklahoma City, OK 73134-1016


Parsimony Pictures, LLC
13031 Villosa Place - #109
Playa Vista, CA 90094-6500

Paul J. Laurin, Esq.
Jonathan Boustani, Esq.
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, California 90067-2904

Ratchet Poductions LLC
200-2025 West Broadway
Vancouver, British Columbia Canada V6J 1
CA


Roslyn Productions, LLC
852 Bay Street - #5
Santa Monica, CA 90405-1362

Saving Santa The Movie, LLC
9 Wimple Street
London W1G 9SR United Kingdom

Shax Animation France
146 Avenue de Lodeve
34070 Montpellier France


Son of House Limited
19 Lesmill Road
Toronto, Ontario M3B2T3  Canada

The Character Shop
64 Water Street - Jewelery Quarter
Birmingham B3 1 HN United Kingdom

The Institution
475 Gold Canyon Road
Calabasas, CA 91302-2204


The Perfect Host, LLC
2932 Wilshire Boulevard - Suite 201
Santa Monica, CA 90403-4948

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

WW Entertainment BV
Meeuwenlaan 100
1021JL Amsterdam Netherlands

Wonderdog 1 Productions, Inc.
341 Water Street - Suite 200
Vancouver, British Columbia V6B1B8

Zambezi Film Pty Ltd.
The Long House Dreyesdal Farm
Bergvliet, Cape Town, South Africa

John D Monte
Law Offices of John D. Monte
15303 Ventura Blvd Ninth Fl
Suite 710
Sherman Oaks, CA 91403-6667


John P Pringle (TR)
Roquemore, Pringle & Moore, Inc.
13300 Crossroads Parkway North Suite 185
City of Industry, CA 91746-3404




The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Cool Beans BV                        (u)Wonderdog 1 Productions Inc.              (u)Afraid of the Dark LLC




(u)Atresmedia Cine, SLU                 (u)Bullett Entertainment LLC Broken Vows     (u)Cool Beans BV
Avenida Isla Graciosa, 13               13488 Maxella Ave - Suite 204                Joop Geesinkweg 501/2A7 1114AB
San Sebasti?n de los Reyes 28073 Madrid,                                             Amsterdam




(u)Loving Vincent Sp.z.o.o.             (u)Marina del Rey, CA 90292                  End of Label Matrix
UL Trzy Lipy 3                                                                        Mailable recipients    63
80-172 Gdansk                                                                         Bypassed recipients     8
                                                                                     Total                  71