TODD A. FREALY (SBN 198780)
JULIET Y. OH (SBN 211414)
JEFFREY S. KWONG (SBN 288239)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: taf@lnbyg.com; jsk@lnbyg.com

Proposed Attorneys for John Pringle,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CINEMA MANAGEMENT GROUP, LLC,<br><br>Debtor. | Case No. 2:24-bk-20369-NB<br><br>Chapter 7<br><br>*EX PARTE* APPLICATION FOR ORDER SHORTENING TIME ON NOTICE FOR HEARING ON MOTION TO CONVERT CHAPTER 7 CASE TO ONE UNDER CHAPTER 11 AND FOR APPOINTMENT OF CHAPTER 11 TRUSTEE<br><br>Hearing:<br>Date:   [To be set]<br>Time:   [To be set]<br>Place:  255 E. Temple Street<br>          Courtroom "1545"<br>          Los Angeles, California<br><br>[*EX PARTE* APPLICATION FOR ORDER SHORTENING TIME FILED CONCURRENTLY HEREWITH] |

1

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE:**

John Pringle, the Chapter 7 trustee ("Trustee") for the bankruptcy estate of Cinema Management Group, LLC, the debtor in the above-captioned Chapter 7 bankruptcy case (the "Debtor"), hereby files this *ex parte* application (the "Application") pursuant to Local Bankruptcy Rule 9075-1(b) for an order shortening time on notice for hearing on the Trustee's motion for the entry of an order converting the Debtor's Chapter 7 bankruptcy case to one under Chapter 11 pursuant to 11 U.S.C. § 706(b) and authorizing the appointment of the Trustee as the Chapter 11 trustee pursuant to 11 U.S.C. § 1104 (the "Motion"). For the reasons set forth in this Application, **the Trustee is seeking to have the Motion heard at the earliest date and time that is available to the Court, but no later than February 7, 2025**.

In support of this Application, the Trustee respectfully represents as follows:

1. The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 7 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code") on December 20, 2024 (the "Petition Date").

2. On or about January 9, 2025, the Trustee was appointed as the Chapter 7 trustee of the Debtor's bankruptcy estate.

3. The Debtor is a full service international sales company that was previously headed by veteran sales and distribution executive, Edward Noeltner. As of the Petition Date, the Debtor held distribution rights related to eighty-two (82) feature films.

4. Typically, for each feature film, the Debtor entered into a written sales agency agreement with the production company that owns the rights to such film (each, a "Sales Agency Agreements," and collectively, the "Sales Agency Agreements"), pursuant to which the Debtor was granted the exclusive right to negotiate and enter into agreements (the "Distribution Agreements") with third party distributors, licensees and broadcasters ("Distributors") to distribute the film within specified territories.

1     5.    The Sales Agency Agreements generally provide for the Debtor to represent the films within the market (including to promote and market the films at film and television festivals/markets), to negotiate and enter into Distribution Agreements to distribute the films, to collect revenues due from Distributors under the Distribution Agreements, to ensure the timely delivery of film materials to Distributors as required under the Distribution Agreements, and to consult with the production company regarding the status of the foregoing sales and distribution activities. In exchange for such services, the Debtor is typically entitled to the payment of a commission based on the gross receipts earned from the distribution of the film rights, plus certain recoupable expenses as specified in the Sales Agency Agreements.

6.    The Debtor's filed bankruptcy schedules [Doc. No. 1] list assets with a total estimated value of approximately $2,432,000 as of the Petition Date, including cash of approximately $1,248,000 and outstanding accounts receivable with a total face value of approximately $240,000. The foregoing figures do not take into account the value of the payments potentially due to the Debtor from Distributors under the terms of the Distribution Agreements (the "<u>Potential Distribution Collections</u>"), which the Debtor's schedules attributes an "Unknown" value to.

7.    The Debtor's filed bankruptcy schedules list two secured debts owed to Banc of California and Bondit LLC. Based on the Trustee's investigation to date, the Trustee believes that the total amount of the Debtor's secured debt is approximately $1,738,000. The Debtor's filed bankruptcy schedules list unsecured debts totaling approximately $7,356,000. All but $150,000 of the total amount of unsecured debt listed by the Debtor relates to obligations purportedly due from the Debtor under the Sales Agency Agreements.

8.    The Trustee believes, based upon his discussions with the Debtor's principals and employees as well as Philip Fier of Focus Advisory Services, a third-party valuation expert within the film and television industry, that if the Debtor's case is converted to one under Chapter 11, the Debtor's business operations can be maintained in the ordinary course of business (on a streamlined basis), and the value of the Sales Agency Agreements and

1  Distribution Agreements can be preserved and maximized for the benefit of the Debtor's
2  creditors through an expedited sale process. Based on such discussions, the Trustee believes that
3  an expedited Chapter 11 sale process for the Debtor's assets, which maintains the Debtor's
4  business as a going concern, will be the best way to attract serious buyers and maximize the
5  value that can be realized for the Debtor's assets. If the Court converts the Debtor's case to one
6  under Chapter 11, the Trustee intends to immediately retain Focus Advisory Services to get a
7  marketing and sale process under way.

8        9.    Tiffany Kilgore, the Marketing and Logistics Director for the Debtor, and
9  Makayla Wilson, the Head of Operations for the Debtor, are both willing to work with the
10 Trustee to maintain the Debtor's business operations and fulfill the Debtor's obligations under
11 the Sales Agency Agreements and Distribution Agreements. Ms. Kilgore, who has worked with
12 the Debtor for over a decade, will be able to provide guidance regarding the terms of the Sales
13 Agency Agreements and Distribution Agreements, ensure compliance with marketing and
14 advertising commitments related to the films in the Debtor's library, collect amounts owed from
15 Distributors, and perform other related services. Ms. Wilson will be able to invoice Distributors
16 to ensure timely collections under the Distribution Agreements, perform general bookkeeping
17 services, and manage and update the list of the Debtor's library of film rights.

18       10.    With the assistance of Ms. Kilgore and Ms. Wilson, the Trustee believes that the
19 Debtor will be able to sustain its business operations at a level sufficient to (a) comply with the
20 Debtor's obligations under the Sales Agency Agreements and Distribution Agreements, (b)
21 collect the Potential Distribution Collections in the ordinary course of its business, and (c) pursue
22 a marketing and sale process for the Debtor's assets, which together could result in a potentially
23 significant recovery for the Debtor's unsecured creditors.

24       11.    The Trustee believes that it would be far more effective to undertake the
25 foregoing actions, particularly the continued operation of the Debtor's business, within the
26 context of a Chapter 11 case. In the Trustee's experience, collection of accounts receivable is far
27 more difficult in the context of a Chapter 7 case and counterparties are much less likely to
28

|   |   |
|---|---|
| 1 | perform or pay. In addition, in the Trustee's experience, a sale in Chapter 7 will attract fewer and less serious buyers than a sale of the same assets in Chapter 11, particularly if the business is continuing to be operated as a going concern. |

       12.     Local Bankruptcy Rule 9075-1(b) provides that "[f]or good cause shown, a party may request a non-emergency motion be heard on notice shorter than would otherwise be required by these Local Bankruptcy Rules." "Good cause" has been found where the moving party would suffer immediate and irreparable injury, loss, or damage from a delay in hearing the motion or that exigent circumstances, beyond the control of the moving party, prevent the moving party from having its motion heard on regular notice. *In re Intermagnetics America, Inc.*, 101 B.R. 291 (Bankr. C.D. Cal. 1989). The Trustee respectfully submits that the circumstances herein fit the foregoing criteria.

       13.     If the conversion of the Debtor's case is authorized by the Court, it is urgent that the Trustee seek and obtain the use of cash collateral to operate the Debtor's business and retain professionals to conduct a sale process for the Debtor's assets as quickly as possible. While Ms. Kilgore and Ms. Wilson have agreed to provide cooperation with the Trustee's efforts, they cannot be held in limbo for long and require immediate clarification about their roles in the Debtor's case going forward. In addition, if the Debtor's case is not converted to one under Chapter 11, the Trustee will need to determine whether to immediately seek an extension of the February 18, 2025 deadline set forth in 11 U.S.C. § 365(d) to assume or reject all of the Debtor's unexpired contracts (*i.e.*, sales agency agreements and distribution agreements related to the Debtor's library of 82 films) to try to preserve the value of the Debtor's rights under such contracts.

       14.     Since there is a series of immediate actions that the Trustee will need to take if the Debtor's bankruptcy case is converted (and a potentially different series of actions if the Trustee's request for the conversion of the Debtor's case is denied), which will directly affect the Trustee's ability to preserve the value of the Debtor's assets, it is critical that the Trustee obtain a ruling on the Motion as quickly as possible. If the Motion is not heard on an expedited basis, the

Trustee will be unable to take the steps necessary to preserve and maximize the value of estate assets, which could result in immediate and irreparable loss or damage to the estate and the Debtor's creditors.

15. In addition, the Trustee respectfully submits that there are exigent circumstances, which were beyond the Trustee's control, which prevent the Trustee from having the Motion heard on regular notice. Due to circumstances outside of the Trustee's control, the Trustee was not appointed in the Debtor's case until nearly three (3) weeks after the Petition Date. Since his appointment, the Trustee and his counsel have worked quickly and diligently to assess the Debtor's assets, liabilities, and business operations and have conferred with numerous constituents in the case (including, without limitation, the Debtor, its employees, and creditors) to determine the best path forward in the case. Under these circumstances, the Trustee was not in a position to bring the Motion sooner or to bring the Motion in time to have it heard on regular notice.

**WHEREFORE**, for all of the reasons set forth herein, the Trustee respectfully requests that the Court enter an order (i) shortening time for notice on the Motion so that it may be heard **at the earliest date and time that is available to the Court, but no later than February 7, 2025**; (ii) establishing a date by which any opposition to the Motion must be filed; (iii) establishing a date by which any reply to any opposition to the Motion may be filed; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: January 30, 2025

JOHN PRINGLE, CHAPTER 7 TRUSTEE OF
CINEMA MANAGEMENT GROUP, LLC

By: _____
TODD A. FREALY
JULIET Y. OH
JEFFREY S. KWONG
LEVENE, NEALE, BENDER, YOO
    & GOLUBCHIK L.L.P.
Attorneys for Chapter 7 Trustee

6

## **DECLARATION OF JOHN PRINGLE**

I, John Pringle, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto. I am the duly appointed Chapter 7 Trustee of the bankruptcy estate of Cinema Management Group, LLC (the "Debtor").

2. I submit this declaration in support of the *ex parte* application (the "Application"), to which this declaration is attached, seeking an order shortening time on notice for hearing on my motion for the entry of an order converting the Debtor's Chapter 7 bankruptcy case to one under Chapter 11 pursuant to 11 U.S.C. § 706(b) and authorizing my appointment as the Chapter 11 trustee pursuant to 11 U.S.C. § 1104 (the "Motion"). All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Application.

3. The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code *on* December 20, 2024 (the "Petition Date").

4. On or about January 9, 2025, I was appointed as the Chapter 7 trustee of the Debtor's bankruptcy estate.

5. I am advised and believe that the Debtor is a full service international sales company that was previously headed by veteran sales and distribution executive, Edward Noeltner. I am further advised and believe that, as of the Petition Date, the Debtor held distribution rights related to eighty-two (82) feature films.

6. It is my understanding and belief that, typically, for each feature film, the Debtor entered into a written sales agency agreement with the production company that owns the rights to such film (each, a "Sales Agency Agreements," and collectively, the "Sales Agency Agreements"), pursuant to which the Debtor was granted the exclusive right to negotiate and enter into agreements (the "Distribution Agreements") with third party distributors, licensees and broadcasters ("Distributors") to distribute the film within specified territories.

7. The Sales Agency Agreements generally provide for the Debtor to represent the films within the market (including to promote and market the films at film and television

festivals/markets), to negotiate and enter into Distribution Agreements to distribute the films, to collect revenues due from Distributors under the Distribution Agreements, to ensure the timely delivery of film materials to Distributors as required under the Distribution Agreements, and to consult with the production company regarding the status of the foregoing sales and distribution activities. In exchange for such services, the Debtor is typically entitled to the payment of a commission based on the gross receipts earned from the distribution of the film rights, plus certain recoupable expenses as specified in the Sales Agency Agreements.

8.  The Debtor's filed bankruptcy schedules [Doc. No. 1] list assets with a total estimated value of approximately $2,432,000 as of the Petition Date, including cash of approximately $1,248,000 and outstanding accounts receivable with a total face value of approximately $240,000. The foregoing figures do not take into account the value of the payments potentially due to the Debtor from Distributors under the terms of the Distribution Agreements (the "Potential Distribution Collections"), which the Debtor's schedules attributes an "Unknown" value to.

9.  The Debtor's filed bankruptcy schedules list two secured debts owed to Banc of California and Bondit LLC. Based on my investigation to date, I believe that the total amount of the Debtor's secured debt is approximately $1,738,000. The Debtor's filed bankruptcy schedules list unsecured debts totaling approximately $7,356,000. All but $150,000 of the total amount of unsecured debt listed by the Debtor relates to obligations purportedly due from the Debtor under the Sales Agency Agreements.

10. I believe, based upon my discussions with the Debtor's principals and employees as well as Philip Fier of Focus Advisory Services, a third-party valuation expert within the film and television industry, that if the Debtor's case is converted to one under Chapter 11, the Debtor's business operations can be maintained in the ordinary course of business (on a streamlined basis), and the value of the Sales Agency Agreements and Distribution Agreements can be preserved and maximized for the benefit of the Debtor's creditors through an expedited sale process. Based on such discussions, I believe that an expedited Chapter 11 sale process for

the Debtor's assets, which maintains the Debtor's business as a going concern, will be the best way to attract serious buyers and maximize the value that can be realized for the Debtor's assets. If the Court converts the Debtor's case to one under Chapter 11, I intend to immediately retain Focus Advisory Services to get a marketing and sale process under way.

11. Tiffany Kilgore, the Marketing and Logistics Director for the Debtor, and Makayla Wilson, the Head of Operations for the Debtor, are both willing to work with me to maintain the Debtor's business operations and fulfill the Debtor's obligations under the Sales Agency Agreements and Distribution Agreements. Ms. Kilgore, who has worked with the Debtor for over a decade, will be able to provide guidance regarding the terms of the Sales Agency Agreements and Distribution Agreements, ensure compliance with marketing and advertising commitments related to the films in the Debtor's library, collect amounts owed from Distributors, and perform other related services. Ms. Wilson will be able to invoice Distributors to ensure timely collections under the Distribution Agreements, perform general bookkeeping services, and manage and update the list of the Debtor's library of film rights.

12. With the assistance of Ms. Kilgore and Ms. Wilson, I believe that the Debtor will be able to sustain its business operations at a level sufficient to (a) comply with the Debtor's obligations under the Sales Agency Agreements and Distribution Agreements, (b) collect the Potential Distribution Collections in the ordinary course of its business, and (c) pursue a marketing and sale process for the Debtor's assets, which together could result in a potentially significant recovery for the Debtor's unsecured creditors.

13. I believe that it would be far more effective to undertake the foregoing actions, particularly the continued operation of the Debtor's business, within the context of a Chapter 11 case. In my experience, collection of accounts receivable is far more difficult in the context of a Chapter 7 case and counterparties are much less likely to perform or pay. In addition, in my experience, a sale in Chapter 7 will attract fewer and less serious buyers than a sale of the same assets in Chapter 11, particularly if the business is continuing to be operated as a going concern.

14.     If the conversion of the Debtor's case is authorized by the Court, it is urgent that I seek and obtain the use of cash collateral to operate the Debtor's business and retain professionals to conduct a sale process for the Debtor's assets as quickly as possible. While Ms. Kilgore and Ms. Wilson have agreed to provide cooperation with my efforts, they cannot be held in limbo for long and require immediate clarification about their roles in the Debtor's case going forward. In addition, if the Debtor's case is not converted to one under Chapter 11, I will need to determine whether to immediately seek an extension of the February 18, 2025 deadline set forth in 11 U.S.C. § 365(d) to assume or reject all of the Debtor's unexpired Sales Agency Agreements and Distribution Agreements to try to preserve the value of the Debtor's rights under such contracts. Accordingly, I am seeking to have the Motion heard at the earliest date and time that is available to the Court, but no later than February 7, 2025.

15.     Since there is a series of immediate actions that I will need to take if the Debtor's bankruptcy case is converted (and a potentially different series of actions if my request for the conversion of the Debtor's case is denied), which will directly affect my ability to preserve the value of the Debtor's assets, it is critical that I obtain a ruling on the Motion as quickly as possible. If the Motion is not heard on an expedited basis, I will be unable to take the steps necessary to preserve and maximize the value of estate assets, which could result in immediate and irreparable loss or damage to the estate and the Debtor's creditors.

16.     I believe that there are exigent circumstances, which were beyond my control, which prevent me from having the Motion heard on regular notice. Due to circumstances outside of my control, I was not appointed in the Debtor's case until nearly three (3) weeks after the Petition Date. Since my appointment, my proposed counsel and I have worked quickly and diligently to assess the Debtor's assets, liabilities, and business operations and have conferred with numerous constituents in the case (including, without limitation, the Debtor, its employees, and creditors) to determine the best path forward in the case. Under these circumstances, I was not in a position to bring the Motion sooner or to bring the Motion in time to have it heard on regular notice.

10

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 30th day of January, 2025, at ___Industry___, California.

*[signature]*

JOHN PRINGLE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 2818 La Cienega Avenue, Los Angeles, California 90034.

A true and correct copy of the foregoing document entitled **Ex Parte Application For Order Shortening Time On Notice For Hearing On Motion To Convert Chapter 7 Case To One Under Chapter 11 And For Appointment Of Chapter 11 Trustee** be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 31, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jerome S Cohen**   jsc@jscbklaw.com
- **Jeffrey S Kwong**   jsk@lnbyg.com, jsk@ecf.inforuptcy.com
- **Paul J Laurin**   plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com;jose.barajas@btlaw.com
- **John D Monte**   johnmontelaw@gmail.com, monte.johnb117807@notify.bestcase.com
- **John P Pringle (TR)**   brenfro@rpmlaw.com, jpp@trustesolutions.net;jpringle@rpmlaw.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **January 31, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 31, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **January 31, 2025** | Rebecka Merritt | /s/ Rebecka Merritt |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                    **F 9013-3.1.PROOF.SERVICE**